# West Chicago Street R. R. Co. v. Henry N. Stoltenberg, Adm'r of John Phillips, Deceased.

1. ORDINARY CARE—*By Minors.*—The question as to whether a boy of the age of nine years, when killed by a cable car, was in the exercise of ordinary care, must be answered, not from the standpoint of the care to be expected from an adult, but from that which is to be looked for in boys of the age of the deceased.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed February 11, 1896.

## STATEMENT OF THE CASE.

This is an action by Henry N. Stoltenberg, as administrator, to recover damages for the death of John Phillips, his intestate, which is alleged to have been caused by the negligence of the West Chicago Street Railroad Company.

The declaration alleges that on February 5, 1892, while the plaintiff's intestate was traveling on West Ohio street, at its intersection with Milwaukee avenue, in the city of Chicago, exercising due care for his safety, one of the defendant's Milwaukee avenue cable cars was carelessly and

negligently run upon him, with such force and violence as to cause his death.

Intestate left surviving him his father, who has since died, his mother and two sisters.

At the trial the jury returned a verdict in favor of the plaintiff and assessed his damages at $5,000. Judgment having been entered upon this verdict, the defendant appeals.

The evidence shows that at the time of this accident a truck was going east on Ohio street across the Milwaukee avenue tracks. A Milwaukee avenue cable train bound northwest came up close to the truck, and when the latter had cleared the track, proceeded on its way. Just as the truck cleared the track the deceased, a boy aged nine years, who was north of the wagon, stepped from behind it on the car tracks and directly in front of the moving cable car. The boy was on the proper place to cross the street.

The gripman testified : " As I approached Ohio street there was a grain wagon crossing, going east on Ohio street, and I released the rope to avoid striking him, and applied the brake and checked the train as I approached the other wagon, and about the time that the front of the car was near the wagon I saw that I was going to miss him, and I reached down to get the rope again, and just then there was a little boy jumped from behind this wagon, from the opposite side of me; jumped right out close to the dash right between the rails. Then I reached for the rail brake, and both brakes, to stop the car, and as soon as the chain wound around the drum, which was seven or eight feet, the car stopped, but it had gone far enough so that the boy was under the car. At the time I approached Milwaukee avenue, and the grain wagon was on the crossing, I released the rope and applied the brakes. I held the brakes on lightly until I saw I was going to miss the wagon, and I just released the brakes. I couldn't say what speed that put the car into. It was slow; about as slow as a man would walk. The grain wagon was one of those common large grain wagons with the sides running up two or three feet high,

and then it had flaring sides on each side. I should say the boarding up was about four feet above the platform, and there was no space between the boards. On the other side of that wagon I might see the houses, but I could not see anything on the ground on the other side of the wagon. As soon as I saw the boy I did everything I could to stop the car, and applied the brake with all the power I could. I was ringing my bell when I came there; I did nothing but ring it. I was ringing it all the way up the avenue. At the time this boy jumped there in front of me, I was ringing the bell. I released the brake just as the wagon passed over the track, just as soon as I saw the car was going to miss the wagon. As soon as I saw I could get by I let go, without stopping to determine whether or not anybody was on the other side of it. I did not see the boy before the wagon passed. While the wagon was crossing, and after it crossed I could not see the boy; not until it had gone by a foot or so. I missed the wagon two or three feet or a couple of feet.

EGBERT JAMIESON and JOHN A. ROSE, attorneys for appellant.

SULLIVAN & MCARDLE, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

Under the circumstances of the accident, the gripman being unable to tell that no one was waiting to come immediately from behind the wagon upon the crossing, it was a question for the jury whether appellant was not negligent in permitting its car to move toward the cross-walk at a rate of speed that prevented its being stopped ere it ran upon the deceased.

The right of the deceased to pass over the crossing was equal to that of appellant. Appellant might have so controlled the movement of its car that it would not run over a person who might step from behind the wagon upon the

crossing. Because of the wagon the gripman could not see the boy, and for the same reason the boy could not see the car; each should have been watching for the coming of that whose presence the wagon hid.

Was the boy in the exercise of ordinary care? This question must be answered, not from the standpoint of the care to be expected from an adult, but by that which is to be looked for in boys of the age and experience of the deceased, who was nine years of age. We see no sufficient reason for reversing the verdict of the jury in this regard.

The writer of this opinion is inclined to think that the damages, being only for the pecuniary loss sustained, are excessive.

A majority of the court being unwilling to disturb the judgment on account of the amount of damages awarded, the judgment of the Circuit Court is affirmed.